## CRASLIN ET AL. *vs.* BAKER.

A. died in 1831, leaving a widow and nine children. At the time of his death he owed debts to about the amount of $70, and the property left by him did not exceed that sum in value. The widow took possession of the property, paid the debts of deceased, and consumed most of the property in maintaining herself and children. In 1838 the widow intermarried with one B. Shortly after the intermarriage one of the sons of deceased took out letters of administration on his father's estate, went to the house of B., in company with the other defendants, and forcibly took possession of the property in controversy as the increase of the stock left by A. B. sued the defendants in trespass, and recovered the value of the property taken. Under the peculiar circumstances of the case the court permitted the verdict to stand, although as a general rule of law no person can acquire a right to the personal property of an intestate without administering on the estate, and conforming to the provisions of the statute in such cases.

8 437
124 376

APPEAL from Howard Circuit Court.

HAYDEN, *for Appellants.*

1. The property taken and sold by defendants, if the property of the estate of the deceased, Hanks, was properly sold as against the plaintiff, and whether the same were of the estate of the deceased, Hanks, was a question for the decision of the jury.

2. The court erred in not giving the instructions prayed for by defendants.

3. The court erred in giving the opinion which it gave to the jury upon their return into court, after having retired from the bar to consider of their verdict.

*Craslin et al.* vs. *Baker.*

· 4. The court erred in not setting aside the verdict, and in refusing a new trial to the defendants.— See Statutes, Digest, 1825, vol. 1, p. 102, sec. 30 ; Dig. 1835, p. 148, sec. 27 – 30.

′ Todd and Leonard, *for Appellee.*

1. The first, third, and fifth instructions of defendants were properly refused, for a person even having legal right to property is not justified in taking possession of property, to commit a trespass, with force.

2. The second and fourth instructions were properly refused, because they contain an abstract proposition, and too general in terms, and the title of the defendants not involved, and because time and possession will give right to personal property without administration, where possession is under color of legal title.— 3 Bacon Ab., 21, note.

3. The weight of evidence was for the plaintiff, and the verdict was for the right party.

4. The plaintiff's instructions were right.

5. The defendants did not *except*, although objecting to a previously expressed verbal opinion of the court.

6. The statute of 1824 gave the widow a right to $150 worth of property; she retained under that right, and is entitled to the increase.

7. The administration was taken under color to deprive the plaintiff of his property, and should not justify a trespass, in taking and selling estate secured to the widow by law, the administration having power only to appraise the original stock, and take the widow's receipt for it.— Mo. Dig., 1824, 5 ; Toller, 228, and note ; 3 Bacon, 21, and note ; 6 Litt., 81.

Tompkins, J., *delivered the opinion, of the Court.*

This is an action of trespass, commenced by Morris Baker against James Craslin, David Hanks, William Hanks, and others, in the Circuit Court of Saline county. From this court the suit was transferred to Howard Circuit Court; there a judgment was obtained against the defendants, from which they appealed to this Court.

In the year 1838, Baker, the appellee, married the widow of one Zachariah Hanks, who had died in November, 1831, in Saline county, leaving nine children, who lived with their mother, and were raised by her, until she intermarried with the plaintiff. The eldest was nineteen years old at the death of his father. When the deceased, Hanks, was on his death-bed, he told one of the witnesses of the defendant, that he owed about seventy dollars, and that he was leaving his family destitute, as his property would not pay his debts and support them. This witness says, that the property left by Hanks, at his death, was not worth the seventy dollars ; "that he knows the old lady, by selling pork that winter, and with her boys' work afterwards, paid a debt of the old man's of $32 or $33 to Craslin."

. Another witness of the defendants proved, that one of the minor children, with the consent of his mother, hired himself to this witness for a year ; that he, the

witness, paid this minor, some in clothing, some in bacon, and also assumed and paid to one Compton a debt of thirty dollars left by the old man, Hanks, at the time of his death.

It was also proved, that the widow paid the funeral expenses of her deceased husband, and that she paid to one of the witnesses four dollars, which the deceased, in his life time, owed to the witness. On the 20th day of July, in the year 1839, David Hanks, one of the sons of the deceased, took out letters of administration on the estate of his deceased father. This was done nearly eight years after the death of the father. One of the sons of the deceased, Jesse Hanks, called by the defendants, states, that when his father died, in 1831, he left nine children, himself the eldest; that his father had, at the time of his death, two cows and calves, one or two yearlings, and betwixt fifteen and thirty head of hogs.

After David Hanks, as aforesaid, had taken out letters of administration, he and the other defendants went to the house of the plaintiff, Baker, and forcibly took and carried away some cattle found there; and the last-mentioned witness states, that all the stock taken and sold by David Hanks, his brother, "was the natural increase of the stock on hand at the time of the death of his father, with some trifling exceptions of a stray cow left on hand at the death of his father, one yoke of oxen, which he had gotten in exchange for a stray left by his father.

There was some contradictory testimony as to the origin of the stock. Some of the testimony went to prove that a part of the cattle, &c., taken away by the administrator, was the increase of cows purchased by the widow. But it is not material to the present purpose whether it were or not.

A witness called by the plaintiff represents the quantity of hogs left by the deceased as somewhat less than the son of the deceased above-mentioned, called by the defendants, stated it to be; and further said, that the family, the winter of the death of its head, used such of the hogs as were fit for pork, and made beef of one cow; and that, at the time of the sale of the property by David Hanks, under the letters of administration, there were about sixteen head of cattle, including one yoke of oxen, and about one hundred head of the hogs; some of the children appear to have been supplied with cattle when they left their mother. The plaintiff had been married, and in possession of the stock more than a year before it was taken by the administrator, David Hanks.

On this evidence, the defendants moved the court to instruct the jury —

1. That in case they find the property sued for was taken and sold as the property of Hanks, deceased, by an administrator, and that the property taken and sold was the natural increase of the stock on hand at the time of his death, that then the administrator had a legal right to the property, and was not a trespasser by taking the property and selling it.

2. That by the law, no person can acquire a right to the effects of a deceased person who dies intestate, except by administration, except as excepted by the statutes of this State in favor of families.

3. That if, in this case, the jury believe, from the evidence, that if the wife of the plaintiff had taken into her possession property of her former husband without any grant of administration, and that that property, and its natural increase, is the

property now sued for, and that the trespass complained of was the taking of the same by a lawful administrator as the property of the deceased, and selling the same as such, that in such case, the defendant, David Hanks, the administrator, was not guilty of a trespass, and in this action the jury ought to find for the defendants.

4. That if Mrs. Baker took the personal property of her deceased husband into her possession after his death, and he died intestate, she, by such act, acquired no right in such property as against a lawful administrator of her deceased husband, Hanks, and that the natural increase of said cows and hogs also belongs, in law, to the administrator, to be administered according to law.

5. That if Mrs. Baker is found by the jury, from the evidence, to have been the wife of Hanks, at the time of his death, and he died intestate, and she took the cattle and hogs of her deceased husband into her possession, and used them as her own, that in such case she has acquired no legal right either to the cattle or hogs, or to their natural increase, so taken into her possession, as against a lawful administrator of the deceased; and that the plaintiff, Baker, by his intermarriage with her, acquires no more right to the cattle and hogs than the wife had before such marriage, and that they ought to find for the defendant, David Hanks, in this action.

The plaintiff objected to the giving of these instructions to the jury, and this objection was sustained by the court.

The plaintiff then moved the court to give these following instructions, which were objected to by the defendants:—

1st: That the jury may, in this case, find all or any of the defendants guilty according as they shall be satisfied, from the evidence, of the guilt of the defendants respectively.

2d: That in trespass all are principals, and if one person actually commits the trespass, and others aid, assist or advise the committing of the trespass, the persons so aiding, assisting, or advising, are equally guilty with the person actually committing the trespass.

3d: That in this action the jury may give damages over the value of the property by way of smart money, if they think proper.

The court overruled the defendants' objections to these instructions, and permitted them to be made to the jury. The jury found a verdict for the plaintiff, Baker, and the court entered a judgment thereon, a new trial was moved for, and the motion overruled.

The plaintiffs in error, defendants below, contended—

First: That the property taken and sold by them, if belonging to the estate of the deceased, Hanks, was properly sold as against the plaintiff, and that whether it belonged to that estate was a question of fact for the jury to find.

Second: That the court erred in not giving all and every the instructions to the jury which were prayed for by the defendants, now plaintiffs in error.

Third: That the court erred in giving the opinion which it gave the jury upon their return into court, after having retired from the bar. It appears on the bill of exceptions, that on the occasion referred to in this third instruction, one of the

*Crassin et al.* vs. *Baker.*

jury inquired, whether the widow of Mr. Hanks was, on the death of her husband, entitled by law to keep, as her property, any stock on hand, and property, when it was not worth more than the sum of one hundred dollars, and if so, whether she would be entitled to the increase after his death, whether there was administration or not; and that the judge of the court answered, that he thought she would, but that no instruction had been asked on that point, and they would decide the matter for themselves.

Fourth point of plaintiffs in error: That the court erred in not setting aside the verdict, and granting a new trial.

Nothing is more true than that, on the death of Hanks, the property left by him would have belonged to the administrator had any person taken out letters; and by the law in force when Hanks died, the widow had the preference among the representatives of the deceased to take out letters of administration. (See Digest of 1825, p. 93, sec. 4, of the act concerning executors and administrators.) The same preference was given to her by the fifth section of the act respecting executors and administrators, article 2 of the Digest of the year 1835.

The widow, then, would have been inexcusable, if the estate left by her husband had been amply sufficient to pay the debts, and to furnish subsistence to the family, had she appropriated to her own use any of the property belonging to the estate, except what is expressly allowed to her by the act over and above her jointure or dower, to wit, her own and her husband's wearing apparels, her cards, wheels, looms, and other implements of industry, spun yarn, cloth, &c., made in the family for their own use; all meat, bread, vegetables, groceries, and other provisions for the subsistence of the family, beds, bedding, &c.

The law allows her also to take such property, goods, wares, and furniture not to exceed the appraised value of $150, which shall be deducted from her dower, in the personal estate of the deceased, if any remain to her after the payment of the just debts of the deceased; and the property so delivered to the widow (it is declared) shall, in no case, be liable to the debts of the deceased. (See Digest of 1825, sec. 30, p. 103; also Digest of 1835, sec. 27–9, of article 2, p. 48.) The stock of cattle and hogs left by the deceased might have been selected by her had there been an administrator, and in such case, those articles of property would not have been liable to the debts of the deceased, as aforesaid. But what is the condition of this estate, as it appears from the evidence spread on the record? Hugh Tennille, a witness of the defendants in the suit below, states about the same amount of stock to have been left by the deceased, at the time of his death, as was stated by Jesse Hanks, a son of the deceased above-mentioned, except that Tennille said there were from 15 to 20 hogs, and that Jesse Hanks said there were betwixt 15 and 30 hogs. Both of these witnesses concur in stating that all the property left by the deceased was *gone*, before the administrator took the property, except one cow. Tennille, whose testimony has been already partly stated, says, that the deceased told him on his death-bed that he was leaving his family destitute; that he owed about seventy dollars, and his property would not pay his debts and support them. The witness adds—"All the property left at his death was not worth the seventy dollars: he knows the old lady, by selling pork that

56

---

*Craslin et al. vs. Baker.*

---

winter, and with the boys' work afterwards, that a debt was paid by her to Craslin of 32 or 33 dollars." A marginal note in the record puts Compton for Craslin. In another place, it is in evidence that she paid Compton thirty dollars, paid another person four dollars, and defrayed the expenses of her husband's interment.

These several sums of money must amount to at least $44, if we even admit that the debt stated to have been paid to Craslin and Compton are the same. Let it be recollected, that if the next of kin refuse or neglect to administer, then the law throws open the door to any person whom the court or clerk in vacation shall consider most suitable. There were creditors: none applied, for a very obvious reason; the widow would have claimed all the property, if any had been left, after paying the expenses of administration. For nearly eight years no letters were taken out. During this time the widow had the choice to take out letters of administration, and consume the property of the estate in defraying the necessary expenses of the administration before she could get her statutory allowance in due form of law, or to obey the calls of nature, more imperious than the commands of the law, and appropriate the property of the estate to the support of herself and the children of the deceased.

The law allows her to retain of the personal property of the deceased to the appraised value of $150. It is proved by a witness of the plaintiffs in error, that all the property left by the deceased was not worth the seventy dollars which he declared, on his death-bed, he owed.

It is proved, also, that of this sum of seventy dollars, the widow paid at least $44. No creditor or other person would administer in order to let the widow have her allowance under the statute. If she had administered herself, most of the small pittance left by her husband would have been consumed by the expenses; and by the 13th section of the 6th article of the act concerning administrations, Digest of 1835, it is provided, that "If upon the return of the inventory and appraisement, it appear to the court that there is not more than that to which the widow is by law entitled without being subject to the payment of debts, &c., the County Court may make an order in its discretion, that such estate be delivered to the widow.

There can be no doubt but the instructions asked by the plaintiffs in error state the law correctly, but this case is peculiar. This woman made herself executrix, *de son toūt per force.* In her it was a meritorious act; no creditor would administer, the children were too young; she took possession of the property, less in amount than the law would have given her; she paid the debts of the deceased, and fed and clothed her infant children. The case is one *sui generis,* and had the instructions prayed by the plaintiffs in error been given, a jury would still have been justifiable in finding as they did. Nobody else would have taken charge of this property as this woman did. If she had not appropriated it, all of it would have been lost to the creditors and the widow and children of the deceased. And now, eight years after the death of the husband, when she has paid the debts, fed and clothed the children, an administrator comes to sweep from her the property created, as it were, by her good management.

Had there been any fraud or concealment of the property proved, the case would

have been altered; but, as it appears on the record, all is fair, and the witnesses of plaintiffs in error testify most strongly in favor of the conduct of the widow of the deceased.

For one year, it appears in evidence, the plaintiff below, defendant in error, had been married to the widow, and in the full possession of this property, and the services of the widow, now the wife of the defendant in error, over and above her payment of the debts of the deceased, are worth much more than the property was when she took it into her care; that there is any increase of the stock of cattle and hogs is owing to her diligence. If letters of administration, it is repeated, had been taken out immediately after the death of Hanks, all the property would have been less than the law would have allowed to her. It would be more than unjust, then, after eight years, to come with letters of administration, and sweep from her this property, as increased by her labor, when, too, with that property she has paid the debts and fed the children.

We are of opinion, then, that the judgment of the Circuit Court ought to be affirmed, and it is accordingly affirmed.